UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM MICAH GIBBONS THORNTON,

                Plaintiff,

     v.                                          **DECISION AND ORDER**
                                                         14-CV-748S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

      1.      Plaintiff William Micah Gibbons Thornton challenges an Administrative Law Judge's ("ALJ") decision dated March 27, 2013, wherein the ALJ determined that Plaintiff was not disabled under the Social Security Act (the "Act").  Plaintiff now contends that this determination is not based upon substantial evidence, and remand is warranted.

      2.      Plaintiff filed an application for disability insurance benefits under Title II and an application for supplemental security income under Title VII of the Act on October 15, 2011, alleging a disability beginning on May 15, 2008.  The claim was initially denied on January 18, 2012.  Plaintiff thereafter requested a hearing before an ALJ, and, on March 4, 2013, Plaintiff appeared and testified in Buffalo, NY.  The ALJ subsequently found on March 27, 2013 that Plaintiff was not disabled within the meaning of the Social Security Act.  Plaintiff filed an administrative appeal and the Appeals Council denied Plaintiff's request for review on July 7, 2014, rendering the ALJ's determination the final decision of the Commissioner.  Plaintiff filed the instant action on September 5, 2014.

3. Plaintiff and the Commissioner each filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 5, 7). Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (internal quotation marks and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

5. To determine whether the ALJ's findings are supported by substantial evidence, "a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's

finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.      Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2013. (R. 16).[1] He then made the following findings with regard to the five-step process set forth above: (1) Plaintiff had not engaged in substantial gainful activity since May 15, 2008, the alleged date on which Plaintiff became disabled (id.); (2) Plaintiff had the following severe impairments: schizophrenia, psychotic disorder, and history of alcohol and marijuana use/abuse (R. 17); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a recognized disabling impairment under the regulations (R. 17-18); (4) Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with certain non-exertional limitations,[2] and that these non-exertional limitations precluded Plaintiff from performing his past relevant work as a customer service representative (R. 18-22); and (5) considering the Plaintiff's age,

---

[1] Citations to the underlying administrative record are designated as "R."
[2] The ALJ determined that Plaintiff is able to perform "simple, unskilled work without consistent contact with the general public." (R. 18).

4

education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (R. 22-23).

10. Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence. Specifically, he asserts that the ALJ failed to incorporate the limitations assessed by examining physician Dr. Renee Baskin into his RFC finding, and that the ALJ should not have relied on non-examining consultant Dr. Hillary Tzetzo's functional assessment because it was "wildly inconsistent" with her other findings. (Pl.'s Mem. of Law at 11-17).

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)). Here, after considering the entire record, the ALJ determined that Plaintiff had the RFC to "perform a full range of work at all exertional levels" with the non-exertional limitation "to perform simple, unskilled work without consistent contact with the general public." (R. 18). Plaintiff asserts that although the ALJ afforded "the greatest weight" to the opinions of both Drs. Baskin and Tzetzo when formulating Plaintiff's RFC (R. 22), he failed to sufficiently incorporate Dr. Baskin's opinion into the RFC determination. In particular, Plaintiff contends that the RFC does not reflect Dr. Baskin's assessment that Plaintiff "would have moderate limitations being able to maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others and appropriately deal with stress." (Pl.'s Mem. of Law at 12, citing R. 239).

An ALJ should consider "all medical opinions received regarding the claimant," Yeomas v. Colvin, No. 13-CV-6276P, 2015 WL 1021796, at *15 (W.D.N.Y. Mar. 10, 2015) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)), and it is "well within [the discretion of the ALJ] to credit the opinions of certain" medical opinions over others. See Talavera v. Astrue, 500 F. App'x 9, 12 (2d Cir. 2012) (citing Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.")). However, this Court does not see a material conflict between the opinions of Drs. Baskin and Tzetzo, nor between the ALJ's RFC assessment and those two medical opinions.

Both Dr. Tzetzo and Dr. Baskin found that Plaintiff had a number of "moderate" limitations that would affect his ability to work. Dr. Baskin opined that Plaintiff "would have moderate limitations being able to maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others and appropriately deal with stress." (R. 239). Dr. Tzetzo identified a number of moderate limitations by checking boxes on a worksheet (*inter alia*, ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to work in coordination or proximity to others without being distracted by them; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to accept instructions and respond appropriately to criticism from supervisors) and ultimately opined that Plaintiff "should be able to understand and follow work directions in a work setting with low public contact, maintain attention for such

work tasks, relate adequately to a work supervisor for such work tasks, and use judgment to make work related decisions in a work setting with low public contact."[3] (R. 240-41, 256).

Plaintiff fails to demonstrate that these moderate limitations require the finding of a more limited RFC, or even that Dr. Baskin's opinion is inconsistent with Dr. Tzetzo's opinion. Instead, the RFC is fully consistent with both opinions: "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). And, further, the determination that Plaintiff should not have "consistent contact with the general public" accounts for his moderate social limitations. See, e.g., Wasiewicz v. Colvin, No. 13-CV-1026S, 2014 WL 5465451, at *5 (W.D.N.Y. Oct. 28, 2014) (ALJ accounted for moderate social limitations by requiring "no more than occasional contact with the public, coworkers, or supervisors"); Graves v. Astrue, No. 11-CV-6519 MAT, 2012 WL 4754740, at *11 (W.D.N.Y. Oct. 4, 2012) ("[T]he ALJ did include the 'moderate' limitation . . . in regards to [plaintiff's] ability to work closely with others by finding that [plaintiff] should be limited to having only occasional contact with co-workers and members of the public[.]"); Reilly v. Colvin, No. 1:13-CV-00785 MAT, 2015 WL 6674955, at *3 (W.D.N.Y. Nov. 2, 2015) ("a limitation to only 'occasional' or 'limited' contact with others has been found sufficient to account for moderate limitations in social functioning").

---

[3] With respect to the worksheet completed by Dr. Tzetzo, the regulations state that a "moderate" limitation indicates only some level of impairment, for which the physician should describe "[t]he degree and extent of the capacity or limitation" in narrative format in his or her conclusions. See POMS DI 24510.063(B)(2), available at https://secure.ssa.gov/poms.nsf/lnx/0424510063 (cf. the description of "marked" limitation, "when the evidence supports the conclusion that the individual cannot usefully perform or sustain [work activities]"). Thus, Dr. Tzetzo's functional assessment was not "wildly inconsistent" with her findings that Plaintiff had certain moderate limitations (Pl. Mem. at 16), instead it explains how these "moderate" limitations would impact Plaintiff's RFC.

There is no error simply because the ALJ did not explicitly discuss every moderate limitation assessed by Drs. Baskin and Tzetzo, because he incorporated them into his RFC as discussed above. Wasiewicz, 2014 WL 5465451 at *4-5, (citing Retana v. Astrue, No. 11-CV-00105-PAB, 2012 WL 1079229, at *1 (D. Colo. Mar. 30, 2012) (ALJ was not required to discuss thoroughly each moderate limitation; "ALJ's RFC adopted some of [doctor's] moderate limitations such as restricting plaintiff to unskilled work not involving complex tasks, reflecting plaintiff's moderate limitations in his ability to carry out detailed instructions and to maintain concentration for extended periods")). An ALJ need not call out every moderate limitation by name, provided that the RFC appropriately reflects such limitations. See Crawford v. Astrue, No. 13-CV-6068P, 2014 WL 4829544, at *23 (W.D.N.Y. Sept. 29, 2014) ("although the ALJ did not discuss the moderate limitations assessed by [non-examining psychiatrist], he incorporated moderate limitations into his RFC by restricting [plaintiff] to jobs that require an individual to understand, remember and carry out simple instructions"). The ALJ thoroughly discussed and considered Plaintiff's psychiatric treatment history, his statements concerning daily activities, the lack of restrictions placed on Plaintiff by any of his treating doctors, as well as the medical opinions of Drs. Baskin and Tzetzo regarding Plaintiff's functional mental limitations, and incorporated them into the RFC. (R. 18-22). Thus, this Court finds that the ALJ did not err in assessing Plaintiff's RFC, and that his decision is supported by substantial evidence.

11. For the foregoing reasons, and upon a review of the record as a whole, this Court concludes that the ALJ's determination is supported by substantial evidence.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 5) is DENIED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 7) is GRANTED;

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: February 15, 2016
       Buffalo, New York

                                       /s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                       United States District Judge